UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**RICKY HUBBARD** | Crim. No. 20-507 (KM)<br><br>OPINION and ORDER |

The defendant, Ricky Hubbard, is charged in an Indictment (DE 12), in three counts:

> Count One (possession of firearm and ammunition by a convicted felon), 18 U.S.C. § 922(g)(1);
>
> Count Two (possession with intent to distribute cocaine, heroin and fentanyl), 21 U.S.C. § 841(a)(1) and (b)(1)(C);
>
> Count Three (possession of a firearm in furtherance of a drug trafficking crime), 18 U.S.C. § 924(c)(1)(A)(i).

Currently before the court are the defendant's motions to suppress certain evidence and to dismiss Count Three. (DE 73, 74) For the reasons stated herein, those motions are denied.

# I. MOTION TO SUPPRESS EVIDENCE SEIZED IN CAR SEARCH (DE 73)[1]

## A.   Background

On the morning of November 6, 2019, in the eastbound lanes of Route 22 near Ball Avenue, officers of the Union, New Jersey police department observed a 2012 Kia Sedona, license plate U99KYP. It had tinted windows, and the

---

[1] I dispose of this motion without an evidentiary hearing. *See generally United States v. Voigt,* 89 F.3d 1050, 1067 (3d Cir. 1996) (no hearing required if disputed facts are not material to the result). Disputes noted herein are not material to the result. I have reviewed both sides' exhibits, including the police video of the encounter.

driver (later identified as Mr. Hubbard) was seen speaking on a cell phone. The officers followed in their police vehicle, and paced the Kia at 9 mph above the speed limit. They activated their flashers. The car continued to travel past, e.g., a Delta gas station where it would have been natural to pull over, continuing on to a narrow stretch near Rosemont Avenue, where the Kia, now stopped, partially obstructed traffic. The officers approached the Kia on foot from the passenger side. When they did, they smelled raw marijuana, saw numerous air fresheners, and observed what appeared to be a tampered-with or loose panel on the center console. After some discussion, Mr. Hubbard got out of the car, and the officers reported smelling marijuana on his clothing. He told the officers that he was the only person who used the Kia.

From the front passenger's seat, the officers recovered a blue Igloo water jug containing a plastic Ziploc bag containing marijuana, as well as loose pieces of marijuana, as well as 21 Ziploc bags measuring 1" by 2", commonly used to package narcotics. They then opened the center console. In the empty space behind the drawer they found a plastic bag containing 241 wax paper folds of suspected heroin and approximately 116 multi-colored judges of crack cocaine. Two cellphones were recovered from the car.

Defendant was arrested. In a search incident to arrest, the officers recovered a third cellphone and $102.

Because of the dangerous traffic conditions, the officers arranged to tow the Kia back to police headquarters before searching any more. At headquarters, a further search of the automobile yielded a firearm loaded with seven rounds of ammunition; ten wax paper folds of suspected heroin; two plastic jugs of suspected crack cocaine; and a marijuana grinder.

Defendant was issued summonses for tinted windows, using a cellular phone while driving, operating a motor vehicle while in possession of narcotics, and speeding.

**B.     Discussion**

Defendant Hubbard does not appear to challenge the propriety of the automobile stop as such.[2] Rather, he directs his arguments to the propriety of the search that yielded the drugs and the gun.

Defendant cites *United States v. Rodriguez*, 135 S. Ct. 1609 (2015), and *United States v. Clark,* 902 F.3d 404 (3d Cir. 2018). Those cases hold only that further searches are impermissible once a traffic stop is "prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket" for the traffic violations that were the basis for the stop. *Rodriguez,* 135 S. Ct. at 1612. But the officers may, of course, pursue further investigation based on facts learned in the course of a legitimate stop. *See id.* at 1616-17. Thus an officer may "expand the scope of a traffic stop and detain the vehicle and its occupants for further investigation if [the officer] 'develops a reasonable, articulable suspicion of criminal activity.'" *United States v. Frierson*, --- F. App'x ----, 2015 WL 3485994 (3d Cir. 2015) (quoting *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003)). Unsatisfactory responses to legitimate questions, furtive or suspicious activity, refusal to obey officers' justified instructions, and, *a fortiori,* observation of further infractions may furnish such a basis for extending a stop. *See, e.g., Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *United States v. Green*, 897 F.3d 173, 185–86 (3d Cir. 2018); *United States v. Moorefield*, 111 F.3d 10, 13-14 (3d Cir. 1997).

---

[2]     Police officers may perform investigatory traffic stops based on reasonable suspicion that "an individual has violated the traffic laws." *United States v. Delfin–Colina*, 464 F.3d 392, 397 (3d Cir. 2006). Relatively minor infractions have been held to justify a car stop. *See United States v. Richardson,* 504 F. App'x 176, 179 (3d Cir. 2012) (reasonable suspicion justified pulling over car with defective rear center brake light, an infraction punishable only by a fine); *see also Arkansas v. Sullivan*, 532 U.S. 769, 771, 121 S. Ct. 1876, 1878 (2001) (speeding, improperly tinted windshield, punishable only by fine); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 1557 (2001) (failure to fasten seatbelts of driver and young passengers); *Whren v. United States*, 517 U.S. 806, 817, 116 S. Ct. 1769, 1776 (1996) (waiting for over twenty seconds at a stop sign, turning without a signal, driving at an unreasonable speed).

That is what occurred here. Having stopped the Kia for traffic violations, the officers smelled marijuana. They also observed facts which, from their law enforcement experience, raised further suspicions of drug possession or trafficking: namely, the presence of not one but multiple air fresheners (commonly used to mask the smell of marijuana), as well as loose paneling in the center console, near the radio (suggestive of a "trap" in which to conceal drugs or other contraband). These facts, to an experienced officer, would create reasonable suspicion sufficient to prolong the stop, and indeed probable cause for a further warrantless auto search. *See United States v. Green*, 897 F.3d 173, 178 (3d Cir. 2018) (smell of marijuana); *accord United States v. Ramos,* 443 F.3d 304, 308 (3d Cir. 2006); *United States v. Wimbush,* Crim. No. 19-34 (FLW), 2020 WL 187 1873020, at *16 (D.N.J. Apr. 15, 2020) (car stop based on tinted windows followed by odor of marijuana, justifying search).

Counsel's motion brief states that the officers could not have smelled marijuana because it was "air-tight sealed" in a container. The record does not quite establish that; rather, the reports state that the marijuana was in a Ziploc bag (together with other, loose pieces) inside a water jug. And even if the jug had been sealed, this would not account for, e.g., diffusion of this notoriously pervasive odor beforehand, or the presence of the marijuana grinder, containing residue, in the car. I give no weight to the expert opinion of Dr. Doty, who inspected the marijuana over two years after the seizure and opined that there would have been no discernible odor. The passage of time aside, I find that his conclusions, based on very different conditions from those obtaining at the time of the car stop, lacks a reasonable scientific basis.

I turn to the supplemental search of the Kia after it was towed to the police station. It is well established that if the police were entitled to search a vehicle immediately after stopping it, then they are likewise permitted to search it after it is impounded. *See Michigan v. Thomas,* 458 U.S. 259, 260–62 (1982);

*United States v. Johns,* 469 U.S. 478, 485–86 (1985).[3] Continuing exigent circumstances are not required. *See United States v. Donahue,* 764 F.3d 293, 300–01 (3d Cir. 2014).

To the extent the motion seeks suppression of the items seized from the Kia, whether at the side of the road or later at the police station, it is denied.

## II. MOTION TO SUPPRESS DNA EVIDENCE FROM BUCCAL SWAB AT THE PRISON AND RELATED STATEMENTS (DE 74)

It is undisputed that as of November 2022, when the events relevant to this motion occurred, Mr. Hubbard was both (a) detained at Essex County Jail and (b) represented by counsel in connection with this matter. On November 17, 2022, the government obtained a search warrant for a buccal (cheek) swab of Mr. Hubbard, to be used as a reference for comparison with DNA found on the gun seized from the car. On November 18, 2022, agents went to the Essex County Jail to execute the warrant, but Mr. Hubbard declined to cooperate. The government then obtained a second warrant authorizing the use of reasonable force to obtain the sample. (Gov't Ex. F, attachment B). The agents executed the warrants and obtained the swab on November 21, 2022.[4]

Part of the defendant's objection is that the taking of the swab outside the presence of counsel violated Mr. Hubbard's Sixth Amendment rights. In support, the defendant cites cases such as *United States v. Massiah,* 377 U.S. 201 (1964). Those cases suppressed statements elicited from represented defendants. No statements of evidentiary import are noted. At any rate, the government represents that it does not seek to use anything Mr. Hubbard may have said during these prison encounters, whether as evidence or as impeachment of his testimony. No *Massiah* issue is presented.

---

[3]     *See also Colorado v. Bertine*, 479 U.S. 367 (1987) (warrantless inventory search of automobile pursuant to regularized procedures).

[4]     The prison encounters were recorded on audio and video. Those recordings, as well as agents' notes and reports, were turned over to the defense. Defendant makes no claim that the warrant itself was defective, although the government preemptively argues the issue.

Nor is there a Sixth Amendment right to presence of counsel when DNA or saliva samples are taken. *See United States v. Lewis,* 483 F.3d 871, 873–74 (8th Cir. 2007) (scientific analyses are not "critical stages" of a criminal case requiring presence of counsel); *United States v. Bullock,* 71 F.3d 171, 177 (5th Cir. 1995) (taking of blood and hair samples not critical stages requiring presence of counsel); *Yusov v. Martinez,* Crim. No. 00-5577, 2000 WL 1593385 at *5 (S.D.N.Y. Oct. 24, 2000). To take such samples outside the presence of counsel does not violate the Sixth Amendment.

Defendant argues separately that the government committed prosecutorial misconduct, in that it did not notify defense counsel (who was on trial) in advance of taking the swab. Further compounding the misconduct, counsel argues, are the agents' statements to Mr. Hubbard that the lack of a match could help him, and that his counsel might move to suppress any resulting evidence. Counsel also cites "unnecessary delay" in obtaining the sample. The only appropriate remedy, counsel argues, is dismissal of the indictment.

Dismissal of an indictment based on prosecutorial misconduct is an extreme, rarely applied sanction. It requires a showing of (1) flagrant, intentional misbehavior, and (2) substantial prejudice to the defense. *Gov't of Virgin Islands v. Fahie,* 419 F.3d 249 (3d Cir. 2005). Further, it must be shown that "no less severe remedy is available to address the prejudice." *United States v. Wright,* 913 F.3d 364, 371 (3d Cir. 2019). The conduct here does not rise to that level, and if it did, it could be remedied by means short of dismissal.

To be sure, the government might well have extended the courtesy of a prior notification before taking the swab. More specifically, they might have responded with more alacrity to counsel's requests for information when she learned from her client that the first attempt at taking a swab had occurred. Nevertheless, as noted above, there is no right to have counsel present for the taking of a buccal swab. Obstructing the defendant's ability to exercise a "right" he did not possess was not prosecutorial misconduct .

It is also true that the agents' communications with Hubbard went beyond "please open your mouth." To some extent, they explained what they were doing. They did not, however, elicit incriminating statements from Hubbard, and the government does not seek to introduce into evidence any statement made during this encounter. Neither misconduct nor prejudice is shown.

To be sure, the government could have obtained the swab and the DNA analysis at some earlier time. Nevertheless, it violated no established standard in waiting until some two months before trial to do so. Counsel refers vaguely to the lack of sufficient time to obtain a DNA expert of her own, but this has not been established. Nor has counsel made any concrete showing of prejudice, documented unsuccessful efforts to retain an expert, or sought a continuance to avoid any such prejudice.[5]

The motion to suppress DNA evidence is denied, and the motion to suppress any statements in connection with the taking of the swab is denied as moot.

### III.   MOTION TO DISMISS COUNT III (DE 73)

Mr. Hubbard moves to dismiss Count III of the Indictment, which charges use of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Because his challenge amounts to an invalid pretrial Rule 29 motion based on the insufficiency of the evidence, it must be denied without prejudice to reassertion at the close of the government's case in chief at trial.

In general, "a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. DeLaurentis,* 230 F.3d 659, 660 (3d Cir. 2000). The Third Circuit has, however, made a narrow exception for the rare case in which

---

[5]   There can be no argument that the delay operated to the detriment of accuracy, in the sense of, e.g., degradation of evidence over time. The swab is only a reference sample for comparison to DNA taken from the gun; if anything, its freshness enhances its value.

an indictment effectively pleads itself out of court as a matter of law. That is, a count may be dismissed it the facts pled within the indictment "fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Bergrin,* 650 F.3d 257, 271 (3d Cir. 2011) (citation omitted). Such a motion "must therefore 'be decided based on the facts alleged within the four corners of the indictment, not the evidence outside of it.'" *United States v. Cvjeticanin,* 704 F. App'x 89, 90 (3d Cir. 2017) (quoting *United States v. Vitillo,* 490 F.3d 314, 321 (3d Cir. 2007)).[6]

The defendant here argues that the firearm was located in a hidden compartment in the car's console, accessible only with tools, and therefore could not have been used in furtherance of the Count One drug trafficking offense. Those factual allegations, assuming they are accurate, are extrinsic to the Indictment. More generally, the "in furtherance of" element of this offense is quintessentially a factual issue for the jury, which is required to consider such factors as the type of criminal activity conducted, the accessibility of the firearm, the type of firearm, whether the firearm was stolen, the legality of the firearm possession, whether the firearm was loaded, proximity of the firearm to drugs, and the circumstances under which the firearm was found. *See United States v. Sparrow,* 371 F.3d 851, 853 (3d Cir. 2004).

The motion to dismiss Count III is therefore denied.

---

[6] Of course, an indictment is not required to plea factual details at all; it need only set forth "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(f). There is no doubt that Count III meets that minimum standard.

## ORDER

Accordingly, for the reasons expressed above,

**IT IS** this 9th day of January, 2023,

**ORDERED** that the defendant's motions to suppress evidence seized from the car, to suppress DNA evidence from a buccal swab and related statements, and to dismiss Count III of the Indictment (DE 73, 74) are **DENIED**.

/s/ Kevin McNulty
_____
**KEVIN MCNULTY, U.S.D.J.**