**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | Crim. No. 20-507 (KM) |
| **v.** |  |
| **RICKY HUBBARD** | **OPINION and ORDER** |

**KEVIN MCNULTY, U.S.D.J.:**

Trial of this criminal matter occupied four days in March 2023. (*See* Transcript ("Tr.", DE 124–28).) On March 13, 2023, the jury convicted the defendant, Ricky Hubbard, of all three counts in the indictment: (i) possession of a firearm by a convicted felon, 18 U.S.C. § 922(g); (ii) possession with intent to distribute cocaine, heroin, and fentanyl, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and (iii) possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i). (DE 119, 121)

Now before the Court are the defendant's post-verdict motions for acquittal, pursuant to Fed. R. Crim. P. 29(c), and for a new trial, pursuant to Fed. R. Crim. P. 33. (DE 123, supplemented at DE 129) The government has filed a response. (DE 132) As I write primarily for the parties, familiarity with the Court's resolution of pretrial motions and the trial record are assumed.

## I.   Legal Standards

### A. Rule 29 and Rule 33

Under Rule 29, a defendant who asserts that there was insufficient evidence to sustain a conviction shoulders "a very heavy burden." *United States v. Anderson,* 108 F.3d 478, 481 (3d Cir. 1997) (quoting *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995)). In reviewing a motion for acquittal, the court "must be ever vigilant ... not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment

for that of the jury." *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). The evidence is to be viewed in the light most favorable to the prosecution. *United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001). The government receives "the benefit of inferences that may be drawn from the evidence and the evidence may be considered probative even if it is circumstantial." *United States v. Pecora*, 738 F.3d 614, 618 (3d Cir. 1986). Credibility conflicts, too, are to be resolved in the government's favor. *United States v. Scanzello*, 822 F.2d 18, 21 (3d Cir. 1987). Having applied those principles of interpretation, the court must uphold the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original). *Accord United States v. Fattah*, 902 F.3d 197, 268 (3d Cir. 2018) (reviewing court, applying same standard as district court, must affirm "unless no reasonable juror could accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt"); *United States v. Caraballo-Rodriguez,* 726 F.3d 418, 430-31 (3d Cir. 2013) (en banc) (reaffirming *Jackson* standard and reversing a line of drug conspiracy cases to the extent they undermined it); *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987).

The standard under Rule 33 is more general than that under Rule 29. A court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. When a defendant seeks a new trial claiming that the verdict was against the weight of the evidence, the court's review is less restricted than it is under Rule 29. "However, even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *United States v. Silveus,* 542 F.3d 993, 1004-05 (3d Cir. 2008) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). "Such motions are not favored and should be 'granted sparingly and only in

exceptional cases.'" *Id.* at 1005 (quoting *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987) (citations omitted)).

A Rule 33 motion may also be based on an alleged error or combination of errors at trial. Borrowing the appellate concept of harmless error, district courts have held that a new trial will be ordered when it is "reasonably possible that such error, or combination of errors, substantially influenced the jury's decision." *United States v. Crim,* 561 F. Supp. 2d 530, 533 (E.D. Pa. 2008) (citing *U.S. v. Copple,* 24 F.3d 535, 547 n. 17 (3d Cir. 1994)), *aff'd,* 451 F. App'x 196 (3d Cir. 2011); *accord United States v. Bryant,* Crim. No. 07-267, 2009 WL 1559796 at *6 (D.N.J. May 28, 2009). In doing so, however, the court must consider the alleged errors in the context of the strength of the evidence of guilt, the scope of the objectionable conduct in relation to the entire proceeding, and the ameliorative effect of any curative instruction. *See United States v. Gambone,* 314 F.3d 163, 179 (3d Cir. 2003) (citing *United States v. Zehrbach,* 47 F.3d 1252, 1265 (3d Cir. 1995) (en banc); *United States v. Helbling,* 209 F.3d 226, 241 (3d Cir. 2000)).

### B. Essential Elements of the Charged Offenses

The jury was properly charged, without objection and in accordance with the Third Circuit Model Charges, as to the elements of the charged offenses.

*Count 1* (felon in possession of firearm)

(1)    the defendant knowingly possessed the firearm or ammunition charged in the Indictment;

(2)    at the time he possessed the firearm or ammunition charged in the Indictment, the defendant had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year;

(3)    at the time he possessed the firearm or ammunition charged in the Indictment, the defendant knew that he had been convicted in a court of a crime punishable by imprisonment for a term exceeding one year; and

(4)     the defendant's possession was in or affecting interstate or foreign

commerce.

Third Circuit Model Criminal Jury Instructions, 6.18.922G-1.

*Count 2* (possession with intent to distribute controlled substance)

(1)     the defendant possessed a mixture or substance containing a

controlled substance (either cocaine, heroin, or fentanyl);

(2)     the defendant possessed the controlled substance knowingly or

intentionally;

(3)     the defendant intended to distribute the controlled substance; and

(4)     that the controlled substance contained cocaine, heroin, or fentanyl.

Third Circuit Model Criminal Jury Instructions, 6.21.841A.

*Count 3* (possession of a firearm in furtherance of drug trafficking):

(1)     the defendant committed the crime of possession with intent to

distribute cocaine, heroin, or fentanyl, as charged in Count Two of

the Indictment; and

(2)     the defendant knowingly possessed a firearm in furtherance of the

drug trafficking crime.

Third Circuit Model Criminal Jury Instructions, 6.18.924A.

### C. Common Evidence of Possession

All three counts contain an element of knowing possession. The motion

thus asserts arguments, common to all counts, regarding the sufficiency of the

evidence that Mr. Hubbard knowingly possessed the drugs and the gun.

Because the evidence of possession is very strong, neither a judgment of

acquittal nor a new trial is justified on these grounds.

Possession would be established by evidence that Mr. Henderson

physically possessed the loaded gun, cocaine, heroin, and fentanyl, or had the

power and intent to exercise physical control over them. *See Henderson v.*

*United States*, 575 U.S. 622, 626 (2015).

The drugs and the gun were found together in a concealed compartment

to the right of the driver's seat of the Kia that Henderson was driving when he

was pulled over. The testimony of two police officers (Dets. Akere and Young),

as well as the body camera video, corroborate that Henderson was the single driver and occupant of the Kia. The car was not registered to Henderson, but ample evidence demonstrate that he regularly drove it and treated it as his own. He had received traffic citations on four fairly recent occasions while driving the Kia. On the body camera recording, Henderson made nine separate references to the Kia as "my" car. (Tr. 267–70; Gov't Exs. 306, 409a, 700R) This evidence of possession alone would probably meet the standards of Rules 29 and 33, but there was far more.

The gun and magazine were swabbed for DNA at multiple locations, and expert testimony established that the DNA belonged to Henderson at an astronomically high level of probability. (Tr. 228–30) Dets. Akere and Young, corroborated by the body camera footage, testified to the seizure of the firearm ((Tr. 38, 40, 68, 134, 140, 152; Gov. Exs. 700R, 701, 712, 716). The officers in the chain of custody to and from the DNA lab testified as well. Officer Moro brought the swabs from the Union County Sheriff's Department to the Union Police Department vault (Tr. 288), where they remained until Moro gave them to Det. Young, who testified that he delivered them to the Union County Prosecutor's forensic lab (Tr. 281, 156) DNA Expert Connie Laycock testified that she received and analyzed the swabs (Tr. 219, 225), and the results of her analysis were admitted in evidence.

Mr. Hubbard argues that there was nevertheless a flaw in the chain of custody, however, because Officer Moro did not update the evidence log to reflect that she removed the swabs from the Union County Police evidence vault to transport them to the lab. That record keeping defect, however, was honestly presented to the jury, who could use it to assess the witnesses' credibility. Defense counsel used it in his summation to argue that the DNA results were unreliable. The jury nevertheless apparently found the chain-of-custody testimony credible, as they were entitled to do.

> We have long rejected the proposition that evidence may only be admitted if a "complete and exclusive" chain of custody is established. *United States v. DeLarosa,* 450 F.2d 1057, 1068 (3d

Cir.1971). *See also* 2 Broun *et al., supra,* § 213 (explaining that "a complete chain of custody need not always be proved"); 31 Charles Alan Wright & Victor Gold, *Federal Practice and Procedure* § 7106 (1st ed.) ("It is usually unnecessary to establish a perfect or unbroken chain of custody."). " [S]erious" gaps may render a chain of custody so deficient that exclusion is required, **\*83** *Mejia,* 597 F.3d at 1336, but in the ordinary case gaps in the chain go to the weight of the evidence, not its admissibility, *Melendez–Diaz v. Massachusetts,* 557 U.S. ——, 129 S.Ct. 2527, 2532 n. 1, 174 L.Ed.2d 314 (2009) (quoting *United States v. Lott,* 854 F.2d 244, 250 (7th Cir.1988)). *See also United States v. Clark,* 425 F.2d 827, 833 (3d Cir. 1970); *Mejia,* 597 F.3d at 1335; 5 Mueller & Kirkpatrick, *supra,* § 9:10 (collecting cases). Furthermore, a trial court's ruling about the adequacy of a chain of custody is afforded great deference. It may not be overturned absent a "clear abuse of discretion." *United States v. Jackson,* 649 F.2d 967, 973 (3d Cir. 1981).

*United States v. Rawlins*, 53 V.I. 859, 872–73, 606 F.3d 73, 82–83 (3d Cir. 2010).

This gun yielded DNA swabs as to which the chain of custody, if not perfectly documented, was adequately supported. Under the governing Rule 29 and 33 standards, this credibility issue does not suffice to require a judgment of acquittal or a new trial.

The drugs did not yield DNA evidence. They were contained, however, in the same concealed compartment as the gun, within easy reach of Hubbard. Ample testimony and video evidence established this, and there seemingly is no plausible chain of custody challenge to the drugs. (Tr. 59–62, 70, 75, 147; Gov't Exs. 700R, 701, 712, 716)

**D. Evidence particular to each count**

The remaining elements of each count were well supported by evidence of record, to the extent they were contested at all.

*1. Count 1 (felon in possession of firearm)*

Mr. Hubbard stipulated that at the time of this offense, he had previously been convicted of a felony, and that he knew at the time of this offense that he had that prior felony conviction. (Tr. 445; Gov't Ex. 935) Firearms expert Angel

Casanova testified without contradiction that the firearm traveled across state and international borders from Brazil to the United States and ultimately to New Jersey, and that the ammunition traveled from Idaho to New Jersey, satisfying the commerce element.

### 2.  Count 2 (possession with intent to distribute controlled substances)

The drugs themselves were introduced as exhibits. A forensic scientist presented the results of laboratory analysis to establish that the seized substances were cocaine, heroin, and fentanyl. (Tr. 179–90; Gov't Exs. 8–19, 340–53).

In his motion, Hubbard argues that there was no evidence that he had sold or was in the process of selling the controlled substances. Dets. Young and Akere, corroborated by body camera video, established the seizure of the physical items, including packaging materials. The government presented the opinion testimony of DEA Special Agent David McNamara, to the effect that 369 doses of illegal drugs bearing five different stamps, located in the same compartment as a stolen, loaded gun are suggestive of distribution, rather than personal use. (Tr. 327) The evidence of intent to distribute was more than sufficient.

### 3.  Count 3 (possession of firearm in furtherance of drug trafficking offense)

The underlying drug trafficking offense is the one charged in Count 2. As noted above, there was overwhelming evidence of possession of the firearm, which, under the circumstances, had to have been knowing possession. As for the "in furtherance" element, the government introduced evidence as to each of the relevant factors identified in *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004), as amended (Aug. 3, 2004). The type of trafficking activity, as testified to by Special Agent McNamara, is illegal and risky, and drug distributors obviously cannot rely on the police for protection. (Tr. 321–22). The accessibility of the firearm was established by Akere, Young, and the body camera footage, which showed that it was hidden within easy reach of Hubbard. The type of weapon, *i.e.*, a fairly inexpensive and concealable Taurus 9 mm handgun, is likewise consistent with street-level dealing. (Tr. 324) That

the weapon was stolen[1] is also of use to a drug dealer who does not want it to be traceable. (Tr. 69, 73, 322) As established by the evidence underlying Count 1, the weapon was illegally possessed by Mr. Hubbard. The gun was both loaded and stored in close proximity to the drugs, suggesting that it was kept readily available for use in protecting the stash from theft or interference. (Tr. 323) And finally, the gun, though available, was hidden from casual observation.

Under such circumstances, courts have had no trouble finding sufficient evidence that a gun was possessed in furtherance of drug trafficking activity. *Sparrow,* 371 F.3d at 853; *United States v. Roberts*, No. CR 19-134 (FLW), 2022 WL 92863, at *14 (D.N.J. Jan. 10, 2022).

In short, the evidence was more than sufficient to establish that a judgment of acquittal is not appropriate under Rule 29 and to establish that there was no error or miscarriage of justice requiring a new trial under Rule 33.

## ORDER

Accordingly, for the reasons expressed above,

**IT IS** this 7th day of August, 2023,

**ORDERED** that the defendant's post-verdict motions for acquittal, pursuant to Fed. R. Crim. P. 29(c), and for a new trial, pursuant to Fed. R. Crim. P. 33. (DE 123, supplemented at DE 129) are **DENIED**.

/s/ Kevin McNulty

_____

**KEVIN MCNULTY, U.S.D.J.**

---

[1]     To be clear, the evidence did not suggest that Hubbard was involved in the theft of the weapon.